James COUNTS and Ernestine Counts,
Plaintiffs-Appellants,

v.

MORRISON–KNUDSEN, INC., a corporation, Egizii-Rite Electrical Contractors, a joint venture, Allen-Sherman-Hoff, a division of Ecolaire, a corporation, United Conveyors Corporation, a corporation, and Burns and McDonnell Engineering Company, Inc., a corporation, Defendants,

and

CITY OF SIKESTON, a municipal corporation, Defendant-Respondent and Third Party Plaintiff,

v.

The BABCOCK & WILCOX COMPANY, Third Party Defendant and Intervenor,

and

The Travelers Indemnity Company, Intervenor.

No. 13189.

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 16, 1983.

Motion for Rehearing or to Transfer Denied
Jan. 4, 1984.

Application to Transfer Denied
Feb. 15, 1984.

Lloyd G. Briggs, Sr., Briggs & Briggs, Sikeston, for plaintiffs-appellants.

Manuel Drumm, Sikeston, Albert C. Lowes, Buerkle, Lowes, Beeson & Ludwig, Jackson, for City of Sikeston.

FLANIGAN, Judge.

Plaintiffs James Counts and Ernestine Counts, husband and wife, brought this action against six defendants, including the City of Sikeston, a municipal corporation. Five business corporations are the other defendants. The city filed a motion to dismiss on the ground that the [second amended] petition failed to state a claim upon which relief can be granted against the city. The trial court sustained the motion, dismissed the action with respect to the city, and designated its order of dismissal to be a final judgment for purposes of appeal as

permitted by Rule 81.06.[1] The order is appealable. *Spires v. Edgar,* 513 S.W.2d 372, 377[3] (Mo. banc 1974); *Allen v. Salina Broadcasting, Inc.,* 630 S.W.2d 225, 226[2] (Mo.App.1982). Plaintiffs appeal.

Plaintiffs assert that the petition did state a claim upon which relief can be granted against the city and that the trial court erred in ruling otherwise. In Count I of the two-count petition plaintiff James Counts sought damages for personal injuries and financial losses sustained by him on February 20, 1981, as a result of his falling into a trench. In Count II, which incorporated the material allegations of Count I, his wife Ernestine Counts sought damages on her derivative claim. The inquiry is whether Count I states a claim against the city. If it does, as this court holds, Count II does likewise.

When a petition is attacked by motion to dismiss for failure to state a claim, the mere conclusions of the pleader are not admitted. The facts alleged, however, are taken to be true and the pleader is entitled to all inferences fairly deducible therefrom. If such facts and such inferences, viewed most favorably from plaintiff's standpoint, show any ground for relief, the petition should not be dismissed. The petition is not to be dismissed when the allegations of the petition invoke principles of substantive law which may entitle the plaintiff to relief or when it appears that the plaintiff may be able to prove a set of facts which would entitle him to relief on his claim. The ruling on a motion to dismiss is ordinarily confined to the face of the petition which is construed in a light favorable to plaintiff. *American Drilling v. City of Springfield,* 614 S.W.2d 266, 271[2–4] (Mo.App.1981) (citing authorities). The petition must be accorded a liberal construction. *Matthews v. Pratt,* 367 S.W.2d 632, 634[1] (Mo.1963); *Maples v. Porath,* 638 S.W.2d 337 (Mo.App.1982). So viewed, Count I of the petition, in addition to alleging the legal status of the respective

defendants and a description of plaintiff's injuries, alleged the matters set forth in the next two paragraphs.

The city "is duly authorized" to construct, operate and fund, to the extent of $150,-000,000, an electrical generating plant for the purpose of generating electricity for sale to the citizens of the city and other cities "and associations." On February 20, 1981, the other five defendants, pursuant to a contract with the city and as its agents, were engaged in erecting the power plant. On the south side of and immediately adjacent to the power plant, "there was constructed a certain waterway" in which pipes were situated and over which a metal grating was placed to provide "a common walkway." Prior to February 20, 1981, "one or more of the defendants" negligently removed a section of the metal grating from the walkway and negligently failed to warn plaintiff of that removal. For a long time prior to February 20, 1981, the city negligently allowed the section of metal grating to remain removed and negligently failed to warn of the removal. The condition of the walkway was dangerous and the city knew or should have known of that condition in time to have warned plaintiff of it but failed to do so and thereby caused plaintiff's fall and injuries.

On February 20, 1981, plaintiff was an employee of B & W Construction Company [a non-party] and was engaged in work on the power plant as directed by his employer. As part of his employment plaintiff was required to traverse the walkway in going from his assigned place of work at the power plant to the "clothing change house." While so traversing the walkway plaintiff fell into the trench beneath it and was injured.

The city in its motion claimed, and the trial court in its order held, that the petition was defective for the following reasons:

1. The petition failed to allege facts showing that acts and omissions ascribed to

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

it occurred while the city was acting in a proprietary capacity rather than in a governmental capacity, and thus the city was entitled to a dismissal on the ground of sovereign immunity.

2. The allegation that the co-defendants were agents of the city is a mere conclusion and the petition fails to allege facts supporting that conclusion.

In connection with reason 2, the city's motion stated: "In fact the city has contracted with several independent contractors to do work on its power plant and as such would not be responsible for any acts or omissions by its independent contractors, absent some very unusual factual circumstances, which are not alleged in the petition."

Also in connection with reason 2, the trial court stated: "From a complete review of the pleadings in this case with attachments and notes, there are portions of contracts that make it appear that the city contracted with several entities to do certain work including [a non-party] and ultimately with [a co-defendant] to act as a type of supervisor on this particular job, which in the opinion of the court would make both of those entities independent contractors."

It is necessary to review recent developments in the law of sovereign immunity and to determine how those developments affect the instant petition.

In *Bartley v. Sp. Sch. Dist. of St. Louis Cty.*, 649 S.W.2d 864, 865 (Mo. banc 1983), the court said:

"In *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), this Court abrogated the doctrine of sovereign immunity prospectively as to all claims arising on or after August 15, 1978. The legislature then disenacted the effect of *Jones* by the passage of §§ 537.600 and 537.610, reestablishing with some modification the doctrine of sovereign immunity."

■ Section 537.600, in general, restores "sovereign or governmental tort immunity" as it existed at common law in Missouri prior to September 12, 1977, except as affected by statutes then in effect and with two additional exceptions. The latter exceptions deal, generally,· with injuries arising out of the operation of motor vehicles and injuries caused by the condition of "a public entity's property." *Bartley,* supra, holds that neither of those exceptions comes into play unless the public entity acquires insurance pursuant to § 537.610.[2] For the reason that the instant petition fails to allege that the city purchased liability insurance, the waiver of sovereign immunity, found in § 537.600(2), (injuries caused by the condition of a public entity's property), is not applicable here, even if, which need not be decided, the instant petition could be construed to constitute the pleading of "the condition of [the city's] property."

The sufficiency of the petition to state a claim against the city must be gauged by pre-*Jones* law. Section 71.185 authorizes a city to carry liability insurance for payment of tort claims arising out of the exercise of

2. Section 537.600 uses the language, "the immunity of the *public entity* from liability and suit...." Section 537.610.1, dealing with liability insurance for tort claims, uses the language, "the governing body of each *political subdivision of this state.*" Section 537.610.2 and § 537.610.3, respectively, use the term "public entities" and "public entity." At least for certain purposes, under now repealed constitutional provisions, the term "political subdivision of the state" did not include a city. See *Kansas City v. National Engineering & Mfg. Co.,* 265 S.W.2d 384, 386[4] (Mo.1954). In *Bartley,* supra, the dissenting opinion of Special Judge Wasserstrom mentions, at p. 872, the difference in terminology employed in § 537.-600 and § 537.610. The majority opinion, in *Bartley,* appears to attach no significance to the difference in terminology for it says, at p. 870, "Sovereign immunity is only waived in the two areas provided by § 537.600 and then only to the extent that the *public entity* acquires insurance for such purposes." (Emphasis added.) That cities are included in the language of § 537.600 et seq., seems to be implicit in *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 295 (Mo.App.1983). This opinion need not determine whether cities are within the exceptions set forth in § 537.600(1) (motor vehicles) and § 537.600(2) (condition of public entity's property) because the petition does not plead that the city purchased liability insurance and thus, under *Bartley,* those two exceptions do not apply here in any event.

governmental functions and, in essence, eliminates sovereign immunity to the extent of the insurance so carried. The instant petition makes no claim that the city carried such insurance and thus § 71.185 is of no help to the plaintiffs. *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 297 (Mo. App.1983). *Oberkramer* also states the principles set forth in the following paragraph.

A city functions as a body politic, as an organ of government, and also as a body corporate, an artificial personality or corporation. It has "dual obligations." Since a city, by its nature, can perform both proprietary and governmental functions, in deciding if a city can be sued in a particular instance, a court must look to the nature of the activity performed to determine in which capacity the city has acted. A governmental duty is one which is performed for the common good of all. A proprietary duty is one which is performed for the special benefit or profit of the city as a corporate entity. A city may be held liable for torts arising out of the performance of *proprietary functions* but no recovery is allowed for torts arising out of the performance of governmental functions.

Whether a city, under a given set of facts, is performing a proprietary or governmental function is not always easy to determine and indeed several cases have commented upon the "maze of inconsistency"[3] in the reported decisions. The instant petition seeks to charge the city with liability for injuries sustained during the course of the construction of an electric power plant which was being built by the city's agents, the five co-defendants, pursuant to a contract with the city.

When a city *operates* an electric power plant it does so in its proprietary capacity and not in its governmental capacity. *Burgess v. Kansas City,* 259 S.W.2d 702 (Mo.App.1953); *Lockhart v. Kansas City,* 351 Mo. 1218, 175 S.W.2d 814 (1943); *Vice*

*v. City of Kirksville,* 280 Mo. 348, 217 S.W. 77 (1919); *Riley v. City of Independence,* 258 Mo. 671, 167 S.W. 1022 (1914); 18 McQuillin, Municipal Corporations, 3d Ed. Rev., § 53.101. If the operation of a power plant is a proprietary function, it would be anomalous if the law were to the effect that the building of such a plant was a governmental function. The anomaly does not exist. In constructing a public work the city acts in its proprietary capacity. *Donahew v. City of Kansas City,* 136 Mo. 657, 38 S.W. 571 (1897); 63 C.J.S. Municipal Corporations § 768, p. 64; 63 C.J.S. Municipal Corporations § 917, p. 334.

In *Donahew* the court pointed out that ordinarily there are many preliminary questions to be settled before the details of any public work can be arranged. These questions concern the expediency of doing the proposed work and "the general manner" in which it shall be done. On these and similar questions the city acts in its governmental capacity and "until they are settled, and some specific work is decided upon, the legal obligation to exercise care is not brought to life." *Donahew,* 38 S.W. at p. 573. Significantly the court then said:

"But as soon as the corporation has determined to construct a public work, it enters upon an undertaking which, in all its details, should be subordinated to the rule requiring the use of care, for the work is then ministerial."

The latter language was quoted with approval in *St. Joseph Light v. Kaw Valley Tunneling,* 589 S.W.2d 260, 267 (Mo. banc 1979). In *Jamison v. Kansas City,* 223 Mo. App. 684, 17 S.W.2d 621, 628 (1929), the court held that the city was acting in its proprietary capacity in the construction as well as in the operation of a sewer system and rejected the city's claim that it was acting in a governmental capacity during the construction phase. See also *Bean v. City of Moberly,* 350 Mo. 945, 169 S.W.2d 393, 396–397 (1943).

---

**3.** Oberkramer v. City of Ellisville, 650 S.W.2d 286 (Mo.App.1983); Garrison-Wagner v. City of St. Louis, 646 S.W.2d 131 (Mo.App.1983); Davis v. City of St. Louis, 612 S.W.2d 812 (Mo.App.1981); State ex rel. Allen v. Barker, 581 S.W.2d 818 (Mo. banc 1979); O'Dell v. Sch. Dist. of Independence, 521 S.W.2d 403, 417 (Mo. banc 1975) (Finch, J. dissenting).

In alleging that the tort occurred during, and as a result of the negligence of the city and its agents in, the building of an electric power plant, the petition pleaded facts showing that the city was acting in its proprietary capacity and the city's motion to dismiss, so far as it rested on the ground that the city was acting in a governmental capacity, should have been denied. See *Burke v. City of St. Louis*, 349 S.W.2d 930 (Mo.1961); *Dallas v. City of St. Louis*, 338 S.W.2d 39 (Mo.1960). Indeed in *Dugan v. Kansas City*, 373 S.W.2d 175 (Mo.App.1963), the court held that the trial court erred in sustaining a city's motion to dismiss where it was "not possible, without speculation, to know from the face of the petition" whether the city's function was governmental or proprietary.

The second reason for the insufficiency of the petition, assigned by defendants' motion to dismiss, was that it pleaded the "mere conclusion" that the co-defendants were acting as agents of the city and "in fact" the co-defendants were independent contractors. The order of the trial court found merit in that reason and the order recites that the trial court made a "complete review" of various "attachments and notes" and "portions of contracts."

The petition, to say the least, is not a model of careful draftsmanship. It is not, however, subject to dismissal if it sets forth a claim on which relief may be granted even if the claim is "imperfectly or defectively stated." *Paddock Forest Res. Ass'n v. Ladue Serv. Corp.*, 613 S.W.2d 474, 476[2] (Mo.App.1981). A petition is not fatally defective even if it may have been subject to a motion for more definite statement, Rule 55.27, which the city failed to make and accordingly waived, Rule 55.27(f).

The trial court's order shows that it did not confine itself to the face of the petition but in fact treated the motion as one for summary judgment and considered matters dehors the face of the petition.

Before a trial court may treat a motion to dismiss as one for summary judgment, when matters outside the pleadings are presented and not excluded, it must first notify the parties that it is treating the motion as one for summary judgment and give the parties opportunity to present all material pertinent to a motion for summary judgment. Rule 55.27(a). *American Drilling v. City of Springfield*, 614 S.W.2d 266, 270 (Mo.App.1981). The record fails to disclose that the trial court complied with the foregoing procedure before it treated the motion as one for summary judgment and accordingly it had no right to do so. *Gramlich v. Travelers Ins. Co.*, 640 S.W.2d 180, 183[1] (Mo.App.1982).

The petition does not confine itself to the allegation that the co-defendants were agents of the city. The petition alleged, in general, that the co-defendants, as the city's agents and pursuant to a contract with the city, were engaged in erecting the power plant. It is a reasonable, if not inescapable, inference that the use of the "common walkway" was an integral part of that construction. The petition alleges that "one or more of the defendants" (which would include the city) negligently removed a grating from the walkway and failed to warn the plaintiff of that removal.

It is unnecessary to differentiate between an agent and an independent contractor. The distinction is the subject of an annotation in 19 A.L.R. 253. See also Restatement of the Law of Agency, 2d, Vol. I, § 14N, p. 80. For present purposes it is sufficient to quote the following language from 41 Am. Jur.2d Independent Contractors § 7, p. 750: "An independent contractor agrees to accomplish certain results, but such contractor is not controlled in the details, manner, or particular method of performing the task, whereas an agent is subject to the control of the principal with respect to the details of the work."

The general rule is that a city, as any other owner or employer, is not answerable for the acts of an independent contractor, unless the case comes "within one of numerous exceptions to the general rule." See 18 McQuillin, 3d Ed.Rev., Municipal Corporations, § 53.75(a), p. 316. The various exceptions are discussed in McQuillin,

**364**

§ 53.76, et seq. See also *Salmon v. Kansas City*, 241 Mo. 14, 145 S.W. 16, 22 (1912), where the court points out several situations where a city may be liable for the torts of the "active doer" even if the latter is an independent contractor. In *Salmon* the court said: "Owners have been held liable to servants of a contractor for hidden intrinsic dangers lurking in premises upon which others are invited, without warning, to work." The petition here, however, alleges agency.

The petition, liberally construed, also charges the city with certain omissions of its own as distinguished from vicarious responsibility for omissions of the co-defendants. "Respondeat superior is based on the principle that the master controls the actions of his servants and therefore the servants' actions are attributable to the master. It is not necessary to plead the agency relationship when the allegation is that the act was committed by the master or principal." *Light v. Lang,* 539 S.W.2d 795, 799 (Mo.App.1976). If there was any deficiency in pleading the relationship between the city and the co-defendants, it would not impair the adequacy of the pleading insofar as it pleads negligence on the part of the city itself.

This appeal deals solely with the sufficiency of the petition. It does not deal with the sufficiency of whatever evidence plaintiffs may be able to present against the city, nor does it deal with the propriety of a verdict-directing instruction against the city. The petition was not subject to dismissal on the basis of the second reason contained in the city's motion and the trial court erred in ruling otherwise.

The city has filed a motion to dismiss the appeal on the ground that the plaintiffs' brief fails to comply with Rule 84.04(d). The motion is denied. Although the brief is not of high quality, it is "not so totally lacking in conformity to the rule that the harsh action of dismissal should result." *Dietrich v. Pulitzer Publishing Company,* 422 S.W.2d 330 (Mo.1968).

The judgment is reversed and the cause remanded.

GREENE, C.J., and MAUS and PREWITT, JJ., concur.

CROW, J., recused.