### Charles C. FOWKES
### v.
### PENNSYLVANIA RAILROAD COMPANY, Appellant.
### No. 12680.

United States Court of Appeals
Third Circuit.

Argued Dec. 2, 1958.

Decided March 10, 1959.

Rehearing Denied April 7, 1959.

Bruce R. Martin, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for petitioner.

Samuel H. Stewart, Philadelphia, Pa. (Robert C. Duffy, Philadelphia, Pa., Norman P. Wolken, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The sole question on this appeal from a money judgment in a Federal Employers' Liability Act case is whether the court erred in its disposition of a question concerning the statute of limitations.

At the trial the defendant offered no evidence after the completion of the plaintiff's case in chief. Judgment was for the plaintiff pursuant to a jury's answers to special interrogatories. In an

opinion denying a motion for a new trial the court correctly summarized the un-contradicted evidence pertinent to the statute of limitations as follows:

"Plaintiff's duties as an employee of the defendant from 1924 to the 9th day of September, 1952, were those of a boiler maker and included use of a large air hammer in the cutting of stay bolts. On occasions the air hammer used by him would suddenly stop and cause a severe jolt. This sudden stopping of the air hammer was caused by an accumulation of water in the air lines leading thereto. While this condition existed to some degree throughout the course of plaintiff's employment it became more acute during and after the year 1949 when the work force of the defendant decreased and the water was removed from the lines less frequently. Although Plaintiff often complained to his supervisors of this condition, it continued to exist and the plaintiff continued to experience the sudden jolts a number of times daily until September 9, 1952, when he successfully bid for lighter work involving the use of a smaller air hammer because he felt that the heavy air hammer was becoming too difficult for him and caused his shoulders to be affected. Plaintiff experienced difficulty with his shoulders for about two years prior to September 9, 1952.

\* \* \* \* \* \*

"The evidence does not disclose any one instance to which his condition at the time of filing his complaint could be attributed but it does reveal that plaintiff was suffering from traumatic arthritis which was the direct result of the series of sudden jolts sustained by him during the period of his employment."

This action was filed August 31, 1955. The applicable statute of limitations reads: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C.A. § 56. Thus, plaintiff's action was timely only if the evidence justified or required a conclusion that this "cause of action accrued" on or after August 31, 1952. It is not disputed that, in drilling with a heavy hammer plaintiff, as the court put it, "continued to experience the regular jolts a number of times daily until September 9, 1952" when he was assigned to new and lighter duties. It is also undisputed that the jolting in question caused "intermittent pain for about two years before September, 1952."

The court, relying upon Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, and similar occupational disease cases, reasoned that the statute did not begin to run until plaintiff became aware that an arthritic condition was being or had been developed in his shoulder and back. So the jury was asked: "Did the plaintiff, Charles Fowkes, know or should he have known on or before August 31, 1952, that the physical condition for which he now claims damages existed?" The jury answered, "no", and on that basis the court ruled that the action was timely. Challenging the court's reasoning, the appellant insists that the cause of action necessarily accrued during that extended period prior to August 31, 1952 during which plaintiff was suffering damaging jolts and experiencing pain therefrom. At most, appellant reasons, the present action is a timely claim for such aggravation of injury as may have been caused by jolting experienced during the nine day period from August 31, 1952 until the September 9, 1952 termination of injurious work.

The artificiality of this last suggestion points up the conceptual difficulty and the practical problem of applying a statute of limitations phrased in terms of the accrual date of a cause of action to this type of injury. As the Supreme Court pointed out in an early F.E.L.A. case:

"We do not think it is possible to assign to the word 'accrued' any

definite technical meaning which by itself would enable us to say whether the statutory period begins to run at one time or the other; but the uncertainty is removed when the word is interpreted in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." Reading Co. v. Koons, 1926, 271 U.S. 58, 61–62, 46 S.Ct. 405, 406, 70 L.Ed. 835.

In the present case there is no evidence that plaintiff ever suffered a single seriously injurious jolt. The uncontradicted medical testimony recognized substantial permanent damage to several of plaintiff's joints and attributed this arthritic condition to the cumulative effect of the series of small jolting impacts shown to have been experienced over a long period of time. Thus, no one incident was or could fairly or realistically be identified as the cause of significant harm.

For statute of limitations purposes courts have attempted to adapt and apply the concept of the time of accrual of a cause of action to meet the exigencies of situations analogous to this one in a fair and reasonable way. Thus, in applying the Pennsylvania statute of limitations to tortious injury the highest court of that state has reasoned as follows:

"If the relation is continuous, as in that of master and servant, and the default is likewise continuous until the cumulative effect produces disability in the form of occupational disease, total or partial, the master's failure to perform his duty, as we said above, is regarded as a single wrong continuing so long as the employment continues. Such wrong must therefore be redressed by action brought within * * * [the statutory period] from the time when the employment terminates." Plazak v. Allegheny Steel Co., 1936, 324 Pa. 422, 430, 188 A. 130, 133–134.

This solution appears most frequently in cases of damages caused by the inhalation of injurious particles through a period of employment. Goodall Co. v. Sartin, 6 Cir., 1944, 141 F.2d 427 (Tennessee statute); Rowe v. Gatke Corp., 7 Cir., 1942, 126 F.2d 61 (Indiana statute); Sadowski v. Long Island R. Co., 1944, 292 N.Y. 448, 55 N.E.2d 497 (F.E. L.A.); Hughes v. Eureka Flint & Spar Co., 1939, 20 N.J.Misc. 314, 26 A.2d 567, (New Jersey statute). It has also been found acceptable where harm has been caused by a negligent course of medical treatment. Union Carbide & Carbon Corp. v. Stapleton, 6 Cir., 1956, 237 F.2d 229; Peteler v. Robison, 1932, 81 Utah 535, 17 P.2d 244. Similar rulings as to the postponing of the running of the statute of limitations appear in a variety of situations involving continuing or frequently repeated wrongs. Eldredge v. United States, 10 Cir., 1932, 62 F.2d 449; Montgomery v. Crum, 1928, 199 Ind. 660, 161 N.E. 251; De Feo v. People's Gas Co., 1928, 6 N.J.Misc. 790, 142 A. 756. It is also noteworthy that this concept is rationally restricted, rather than rejected, by those cases which find it inapplicable on a showing that one of several similar traumatic incidents has in itself inflicted such serious or evident harm as fairly to be characterized as creating a cause of action and starting the running of the statute of limitations. E. g. Brassard v. Boston & Maine R., 1 Cir., 1957, 240 F.2d 138; Wright v. Carter Products, Inc., 2 Cir., 1957, 244 F.2d 53. The important thing is not whether trauma is involved, but whether attributing significant harm to a single incident in a series is reasonable.

We conclude, therefore, that the statute of limitations did not begin to run on the present claim before the plaintiff was relieved of jolting work with the heavy hammer on September 10, 1952. This occurred less than three years before suit was filed. Therefore, the suit was timely.

In this view of the matter it becomes unnecessary to consider whether, on the facts of this case, the court below was correct in ruling in substance that the doctrine of Urie v. Thompson, supra, warranted a further postponement of the running of the statute until the plaintiff knew or should have known not only that the jolting had made his shoulder painful, but also that an arthritic condition had developed. Cf. Bradt v. United States, D.C.E.D.N.Y.1954, 122 F.Supp. 190. We express no opinion on this point.

The judgment will be affirmed.